**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY ANDERSON,                          Civil Action No. 2:20-CV-1278-WSS

       Plaintiff,                          The Hon. William S. Stickman IV

  vs.                                    *Electronically Filed*

PITTSBURGH PUBLIC SCHOOLS,

       Defendant.

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Pittsburgh Public Schools ("Defendant" or "PPS"), by its counsel, Brian P. Gabriel, Esq. and Campbell Durrant, P.C., files the following *Brief in Support of Motion for Summary Judgment*.

## I.      Introduction

The Amended Complaint sets forth one count for Title VII retaliation in connection with two adverse employment actions.  The first action was a decision by the School Board on June 19, 2019, to allow Anderson's contract to expire (non-renewal).  The formal resolution to seek other candidates for the deputy superintendent position passed by a vote of 7-1 with one abstention.  The second action concerned a request by Anderson to Human Resources, shortly after the Board's non-renewal decision, for additional compensation in the amount of $94,500. Upon review of the terms of Anderson's employment contract, the additional compensation was deemed inappropriate by Human Resources.  Thereafter, the Superintendent did not submit the request to the School Board and no further action was taken.

As to the Board's decision, the record evidence demonstrates that Anderson had a strained relationship with many Board members and had drawn negative attention relating to his approach with the Board and school district personnel. The negative attention included a hurried plan to move University Prep (middle school) students out of their neighborhood school that was met with Board criticism and rejection just as the Board was considering whether to seek other candidates for the deputy superintendent position.  In contrast, there is no evidence that the Board had knowledge of Anderson's protected activity, much less that the protected activity was the likely reason for his non-renewal.

Similarly, there is no evidence of unlawful retaliation in connection with the review of Anderson's request for an additional $94,500. Although Anderson premised his request upon administrative work performed in 2017, 2018 and 2019, the request was not made until after the Board's non-renewal decision and as his contract was expiring. Additional compensation was not authorized under the terms of his contract, which was never amended to provide otherwise. In this regard, Anderson can identify only two instances where high-level administrators received additional compensation.  Both are dissimilar because there was prior Board approval for discrete "differential" compensation for work not yet performed.  The Board's prior approval in those instances comported with the School Code and effectuated an amendment of their respective employment agreements. There was no reason for PPS to award additional compensation to Anderson.  Nor is there evidence suggesting that those who reviewed his request knew of protected activity by Anderson, let alone evidence that retaliation was the likely reason or "but for" cause of the denial.

## II.   Statement of Facts

Defendant refers the Court to its Concise Statement of Material Facts and Appendix of Exhibits, which are being filed simultaneously with this Brief.

## III.   Argument[1]

"A plaintiff asserting a claim of retaliation has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257-58 (3d Cir. 2017).  "The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the *McDonnell Douglass* framework to satisfy her ultimate burden of persuasion by proving pretext." *Id.* at 257.

Although a plaintiff must ultimately prove "but-for" causation, *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 361-362 (2013), "a lesser causal burden" applies at the *prima facie* stage.  *Carvalho-Grevious*, 851 F.3d at 259.  To meet this standard, a plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action." *Id.* (citation omitted).  A plaintiff may utilize "a broad array of evidence" to show the causal link, including close temporal proximity between the protected activity and the adverse action, intervening antagonistic behavior on the part of the employer, inconsistencies in the employer's

---

[1] The Amended Complaint includes a reference to the cross-filing of the EEOC Charge with the Pennsylvania Human Relations Commission.  (Am. Compl. ¶ 11).  However, Anderson asserts only Title VII retaliation.  If Anderson had alleged liability under the PHRA, the analysis of that claim would not differ from the Title VII analysis.  *See Jones v. School Dist. of Phila.,* 198 F.3d 403, 409 (3d Cir.1999) ("We do not distinguish between the claims under federal and Pennsylvania law in our disposition of the case as we agree with Jones's contention that the standards are the same for purposes of determining the summary judgment motion.").

articulated reasons for taking the adverse action or other evidence that supports an inference of retaliatory animus. *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007).

If the plaintiff establishes a *prima facie* case, the Court proceeds with the familiar *McDonnell Douglas* burden-shifting analysis. *Carvalho-Grevious*, 851 F.3d at 262.

### A.     Non-Renewal of Employment Contract: Plaintiff fails to establish a prima facie retaliation case or pretext

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee who has "opposed" a practice proscribed by Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.SC. § 2000e–3(a).  A plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the employer took materially adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-341 (3d Cir. 2006).  Anderson has failed to produce evidence sufficient to establish the third element.

PPS executed a three-year Employment Agreement with Anderson in September 2016, which was approved by the Board in accordance with the Public School Code of 1949.  24 P.S. § 10-1076.  The contract was effective October 3, 2016 through October 2, 2019, and would end "upon the expiration of the term unless it is renewed."  (CSMF ¶¶ 30-31).

Under the School Code, the Board was required to take official action at a public meeting at least 90 days before the expiration of Anderson's contract if it intended either to retain him for a term of 3-5 years or to consider other candidates for the position.  24

P.S. § 10-1077(b).   On June 19, 2019, the Board approved a Resolution declaring its intention to consider other candidates for the deputy superintendent position. The Resolution was approved by a vote of 7-1 with one abstention.  (CSMF ¶¶ 55, 249).

### 1. There is no evidence that the School Board knew of Anderson's protected activity when it decided against renewing Anderson's contract.

The foundation for any retaliation claim is the decisionmaker's knowledge of the plaintiff's protected activity.  *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (township's motion for judgment as a matter of law should have been granted where plaintiff failed to produce evidence that commissioners knew of his protected First Amendment activity when they voted to suspend him); *Eskridge v. Philadelphia Hous. Auth.*, 722 F. App'x 296, 299 (3d Cir. 2018) (affirming summary judgment where plaintiff claiming Title VII and First Amendment retaliation failed to produce evidence that the individuals who made the decision "knew of Eskridge's complaints at the time he was demoted."). In this regard, a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted."  *Daniels*, 776 F.3d at 196-97 (citations omitted).

This Court analyzed a similar retaliation claim involving a school board that opted not to renew the plaintiff's employment contract as a technology administrator.  *Palfrey v. Jefferson-Morgan Sch. Dist.,* Civil Action No. 06-01372, 2008 WL 4412230 (W.D. Pa. Sept. 25, 2008), *aff'd,* 355 F. App'x 590 (3d Cir. 2009). Palfrey claimed that the board's decision constituted retaliation under the First Amendment.  *Palfrey,* 2008 WL 4412230, at *10.

The defendants moved for summary judgment, arguing that Palfrey "presented no evidence that the defendants had knowledge that Plaintiff had engaged in protected speech." *Id.*  The Court analyzed the evidence relating to whether the board members knew of her protected conduct. *Id.*  With respect to one member, the plaintiff testified that certain subordinates "must have told" the member of her activity but did not "offer any testimony" by these subordinates. *Id.* at 14. The Court found this evidence inadequate. *Id.* With respect to testimony concerning another Board member, the Court noted that "(e)ven if the Court were to accept Plaintiff's version, that the conversation between Burich, Kuhns and Swinchock took place and that they discussed her (protected activity), a reasonable jury would have to infer from Plaintiff's 'surmising' that Burich (a Board member) forwarded this information to the rest of the Board." *Id.* at 16. The court again found "that such an inference is speculative" and insufficient "to create a genuine issue of material fact at the summary judgment stage." *Id.*

The Third Circuit affirmed, holding that Palfrey failed to produce evidence establishing that the school board knew of the protected activity when making its decision.

> The parties do not dispute that Palfrey's testimony and conversations with the Ethics Commission constitute activity protected by the First Amendment. However, Palfrey's accusations that the Board members knew about this activity is a product of her own speculation. She testified that she believed her subordinate informed a Board member of her protected activity and then surmised that the rest of the Board was then so informed. Every Defendant Board member, however, denied having knowledge of her protected activity prior to their decision not to renew her contract. Palfrey only surmises that the Defendant Board members knew of her protected activity and does not rebut these denials. Accordingly, she has failed to offer any evidence on this question

*Palfrey v. Jefferson-Morgan Sch. Dist.*, 355 F. App'x 590, 592 (3d Cir. 2009).

This prerequisite – decisionmakers having knowledge of the protected activity –

applies equally when assessing whether a causal link can be established for a claim of Title VII retaliation.  Thus, the Third Circuit affirmed that summary judgment was properly entered on this basis in a Title VII retaliation case. *Vaughan v. Boeing Co.*, 733 F. App'x 617, 624-25 (3d Cir. 2018) ("To assume that Boeing knew Vaughan engaged in protected activity where the record suggests otherwise would be an unreasonable inference that we cannot make."  Because Vaughan "failed to show his protected activity was a factor in Boeing's decision," he "has failed to establish a *prima facie* claim of retaliation."); *See also Minor v. Wilkie*, Civil Action No. 17-1638, 2020 WL 3270727, *9 (W.D. Pa. June 17, 2020) ("Minor cannot meet" the prima facie burden under Title VII that his protected activity was the likely reason for decision "because the uncontroverted record demonstrates that none of the panel members who interviewed him for the Lead Police Officer position and ultimately selected another candidate knew that Minor had filed an EEOC complaint").

Turning to the undisputed facts in this matter, Anderson fails to produce evidence that the School Board knew of his protected activity when it voted on June 19, 2019. (CSMF ¶¶ 251-253).  Like the plaintiffs in *Ambrose, Vaughan,* and *Palfrey*, Anderson can offer only speculation and conjecture but not evidence from which a jury could reasonably infer that the Board members had knowledge of his protected activity when they decided not to renew his contract.  Accordingly, Anderson is unable to establish the third element as there is no evidence to substantiate a causal connection.

In addition to not having evidence of unusually suggestive timing, this type of argument cannot be used to backfill an empty foundation.  *Palfrey*, 355 F. App'x at 594 ("circumstantial evidence of a temporal proximity between protected activity and an

adverse employment action is not enough to establish knowledge or even a genuine question of knowledge of the protected activity… Palfrey must come forward with evidence, other than circumstantial evidence consisting of temporal proximity, that the Defendants knew of her testimony and conversations prior to the vote not to renew her contract.") (*citing Ambrose,* 303 F.3d at 493).

And while different types of evidence may ordinarily be used to establish the causal connection, "evidence" is not probative of retaliation where the Board lacked knowledge of Anderson's protected activity.  For instance, Anderson expressed a belief that his issues with the Board worsened after Frankovich's complaint was filed.  His speculation about (or perception of) antagonistic or retaliatory actions, however, are unavailing without evidence that they even knew he had engaged in protected activity. *Daniels*, 776 F.3d at 197 (plaintiff "cannot justifiably rely on mere speculation that these adverse actors learned of her complaints from other employees in the school district.")

    2.  Anderson is unable to establish causation where the decision was made by a multi-member School Board.

Establishing a causal link when the decisionmaker is a multi-member body is more difficult, at least when there is no tangible evidence that they received notice of the plaintiff's protected activity.  The Third Circuit "has held that a decision-making body cannot be held liable when less than a majority of its members act with an impermissible motive." *Watson v. Borough of Susquehanna*, 532 F. App'x 233, 236 (3d Cir. 2013) (*citing LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003)).

Even *assuming* Anderson had produced evidence that Dr. Holley (or some other unidentified board member) knew of his protected activity, it would be insufficient to create a genuine issue as to the Board's non-renewal decision.  *See Palfrey*, 355 F. App'x at

593 n.1 (where plaintiff testified that her subordinate told her that she had advised board member Burich of plaintiff's protected activity, the Court noted that "with respect to Burich, even if the subordinate testified at trial…there is no evidence, hearsay or otherwise, that Burich passed the information on to any other Board member."). Thus, even crediting the plaintiff's testimony that at least one Board member knew of her protected activity, the Third Circuit viewed this evidence as insufficient to demonstrate that "the decisionmakers were aware of the protected conduct." *Id.*

*Watson* involved a police officer who had engaged in protected activity that included testifying in a criminal proceeding against the father (Perry, Sr.) of a borough council member (Perry, Jr.), and subsequently claimed that Borough Council retaliated when it voted to terminate "her employment in violation of her First Amendment rights." *Watson v. Borough of Susquehanna*, No. 3:09-CV-294, 2012 WL 5249551, at *2 (M.D. Pa. Oct. 23, 2012), *aff'd*, 532 F. App'x 233 (3d Cir. 2013). The jury returned a verdict in favor of the borough, and also determined that only two of six council members were aware of Watson's protected activity and "of all the Council members who had voted to terminate Plaintiff's employment," only one (Perry, Jr.) "had been motivated by retaliatory reasons." *Id.*

Perry renewed his motion for judgment as a matter of law after the verdict. As stated by the district court: "the critical question becomes whether Plaintiff established a causal link between her protected speech and subsequent termination" through only one "vote to terminate her employment," namely, the improperly motivated vote. *Id.* Finding that Watson could not establish causation, the Court granted Perry, Jr.'s motion. After discussing persuasive authority from the Second Circuit, the Court proceeded to the Third

Circuit's statements on this issue in *LaVerdure*, 324 F.3d at 125-126. *Id*. at *4 ("*LaVerdure* stands for the proposition, among others, that one member of a decision-making body cannot, by himself, subject that body to liability. A logical extension of this principle is that if a Borough cannot be liable based on the improper actions of one of its members, neither can that member be liable because his actions alone could not have formed and do not constitute a controlling majority that could take any action, constitutional or otherwise.").

Applying these standards, and in view of the jury's determination "that the causal link was missing between Plaintiff's protected activity and subsequent termination when assessing the *Borough's* potential liability because four of the six voting members were not aware of Plaintiff's" protected activity, the Court found as a matter of law that Perry, Jr. "lacked the authority to terminate anyone's employment." *Id*. at *5. While Perry, Jr. acted out of retaliation, his "actions did not affect the outcome of the Council's vote because the jury also found that four of the Council members were unaware of Plaintiff's testimony against his father." The non-retaliatory votes of the other four council members precluded a finding that Perry, Jr. "violated Plaintiff's First Amendment rights." *Id*. at *5.

The Third Circuit affirmed, holding that Watson could not "establish the required causal link in order to hold an individual decision maker liable when less than a majority of the decision-making body acted for an impermissible retaliatory reason." *Watson*, 532 F. App'x at 236-37. In that circumstance, the ill-motivated vote of one board member "cannot establish the causal link between Watson's protected activity and her termination." *Id.; see also Armenti v. Tomalis*, No. 1:12-cv-2039, 2016 WL 6493483, at *4 (M.D. Pa. 2016) (even assuming that each individual Defendant who voted to terminate Armenti was retaliating for his protected activity, he "still could not establish causation…

Without the four Defendants who were present, the motion to ratify the termination would have still passed. Armenti cannot establish causation as a matter of law and therefore we shall grant Defendants' Motion for summary judgment."); *cf. Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 263 (6th Cir. 2006) (applying "but for" causation and denying summary judgment where plaintiff submitted evidence sufficient to establish that three of six school board members "voted with improper motivation" and thus decision to reject plaintiff for position would not have been taken "were it not for their votes.").[2]

Anderson needed five Board members to support the renewal of his contract but only one member voted against the Resolution to seek other candidates.  As such, there must be evidence from which it may be inferred that five Board members voted against his renewal for retaliatory reasons to establish the causal link between protected activity and the Board's decision.  The record precludes a viable causation argument because there is no evidence of knowledge on the part of the Board, let alone facts to reasonably suggest that Board members voted as they did for retaliatory reasons.

    3.   Anderson fails to produce evidence that Board's decision was pretextual <u>or that the real reason was unlawful retaliation.</u>

Even *assuming* Anderson had established a *prima facie* case by producing evidence of a causal link between his protected activity and the Board's non-renewal vote, he has failed to demonstrate that its reasons were pretextual for unlawful retaliation.  PPS

---

[2] This causation principle has been applied in other employment and non-employment cases.  *See*, *e.g. Kendall v. Urban League of Flint*, 612 F. Supp. 2d 871, 879-887 (E.D. Mich. 2009) (granting summary judgment on plaintiff's race discrimination claim where hiring decision was made by board of directors, eight of whom voted for another candidate, and plaintiff presented evidence only of one board member who had made racially discriminatory comments that Kendall was not "black enough"); *Kuivila v. City of Newton Falls, Ohio*, No. 4:14-cv-01593, 2016 WL 541478, * 15 (N.D. Ohio Feb. 11, 2016) (plaintiff failed to establish prima facie case of Title VII retaliation with respect to city council's 5-0 vote to terminate his employment contract where he "presented no evidence from which it can be inferred that the other [four] council members were motivated to terminate him because of his protected activity.")

{DocNo=00805701.1 }

has offered the reasons behind the votes of the seven Board members who voted to seek other candidates for deputy superintendent.  (CSMF ¶¶ 57, 59-61, 63-64, 66-68, 70-73 and 76-80).

Once the defendant produces a legitimate reason for its action, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore v. City of Phila*., 461 F.3d 331, 342 (3d Cir. 2006).  To discredit an employer's proffered reason, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *Davis v. Pittsburgh Pub. Sch.*, 930 F. Supp. 2d 570, 601 (W.D. Pa. 2013) ("The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination.").

The standard for establishing pretext puts "'a difficult burden on the plaintiff'." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (*quoting Fuentes*, 32 F.3d at 765). "To show that an employer's legitimate reasons should be disbelieved, a plaintiff must offer evidence that would allow a fact finder to reasonably infer that 'each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action.'" *Marione v. Metro. Life Ins. Co.*, 188 F. App'x 141, 144 (3d Cir. 2006) (*quoting Fuentes*, 32 F.3d at 764).  This requires evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Id.*

The Board was authorized under the School Code to determine whether it wished to renew Anderson's contract or preferred to seek other candidates. It bears noting that "an employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995).

In this case, multiple Board members have provided reasons for their vote. These reasons included Anderson's disrespectful approach with the Board, complaints about his treatment of personnel, the lack of a meaningful justification from the Superintendent for Anderson's retention, and his handling of the U Prep plan that they also rejected on June 19, 2019. There is no evidence to undermine the legitimacy of these considerations. *See Watson v. Se. Pennsylvania Transp. Auth.*, 207 F.3d 207, 222 (3d Cir. 2000). That is, Anderson is unable to demonstrate that Board members either didn't believe or didn't rely upon these concerns. *See Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 210 (3d Cir. 2007) (*quoting Fuentes*, 32 F.3d at 766–67).

Furthermore, "[t]he focus is on the criteria identified by the employer, not the criteria only the plaintiff thinks are important." *Simpson v. Kay Jewelers*, 142 F.3d 639, 648 (3d Cir. 1998). The conflict between Anderson and Board members is a legitimate consideration. *See McCormick v. Allegheny Valley School*, Civ. A. No. 06-3332, 2008 WL 355617, *15 (E.D. Pa. Feb. 6, 2008) (citation omitted) ("conflict with staff is a legitimate reason to terminate employment"). More importantly, it is not a factor that Anderson is entitled to disregard. And while Anderson may attempt to minimize the

conflicts, the tangible evidence prevents him from plausibly contending that the conflicts were not real.  Concerns over Anderson's treatment of personnel is a valid consideration and while Anderson would paint a more positive picture, there is no evidence of pretext.

The request for justification from Dr. Hamlet underscores the same core problem with Anderson's case. No one would credibly suggest that the request was unreasonable. Several Board members found the Superintendent's response as unpersuasive, if not unresponsive. There is no evidence that their viewpoint was unreasonable, let alone unworthy of credence. To this day, there is no evidence that Board members were presented with meaningful information about performance. The viewpoint of Anderson and that of the Superintendent (including conclusory statements regarding Anderson's performance) matters little when scrutinizing the decisionmaker's reasons under *Fuentes*.

Just as poor performance in an interview is recognized as a legitimate reason for not hiring, the Board was certainly entitled to consider its observations of and interactions with Anderson when making its decision.  *See Carr v. New Jersey*, 534 F. App'x 149, 152 (3d Cir. 2013). In these circumstances, Anderson has failed to present evidence that discredits the reasons of the Board for the non-renewal of his contract.   Summary judgment is appropriate.

### B.     Denial of Request for Additional Compensation: Plaintiff fails to establish a *prima facie* retaliation case or pretext

The analysis of Anderson's claim that the failure of PPS to grant his request for an additional $94,500 was never brought to the School Board and requires separate analysis.  As a starting point, Anderson's claim for additional salary for past work directly conflicts with the plain language of his Employment Agreement. The contractual

restriction on additional compensation has a specific foundation in the School Code.  24 P.S. § 10-1073.

Under the School Code, "[t]he affirmative vote of a majority of all the members of the board of school directors" is mandatory when appointing an assistant superintendent, entering into a contract exceeding $100, or "fixing salaries or compensation of officers, teachers or other appointees of the board of school directors."  24 P.S. § 5-508.  Section 508 also applies to "any subsequent modifications of a contract that would increase the school district's indebtedness under that contract."  *Wayne Moving & Storage of New Jersey, Inc. v. School Dist. of Phila.*, 625 F.3d 148, 153 (3d Cir. 2010)(*quoting Hazelton Area School Dist. v. Krasnoff*, 672 A.2d 858, 862 (Pa.Cmwlth.1996)).

Specific to assistant superintendents, there must be "a written contract of employment expressly stating the terms and conditions of employment."  Among other requirements, the contract shall "[c]ontain the mutual and complete agreement between the…assistant district superintendent and the board of school directors with respect to the terms and conditions of employment;" "[i]ncorporate all provisions relating to compensation and benefits to be paid to…the…assistant district superintendent;" "[s]pecify the term of employment and state that the contract shall terminate immediately…"; and  "[s]pecify the termination, buyout and severance provisions, including all postemployment compensation." 24 P.S. §§ 10-1073(e)(2)(i), (iii)-(v).

Anderson's salary was set forth in the contract, as was a prohibition on "any additional salary increments or add-ons not specifically set forth in this Agreement." Any modification to the contract had to be in writing, by mutual consent, and "approved through

official action by the Board."   At no point during Anderson's three-year term was the contract modified to provide for additional compensation.

On July 7, 2019, Anderson submitted a memorandum to Harris wherein he requested "to be paid compensation for the days that I have worked in the capacity of Chief Academic Officer and Chief of School Performance." The memo also included a period wherein Anderson allegedly worked as "Chief Human Resources Officer" and sought additional salary of $94,500.   As stated by Anderson, "[t]he rationale for my request is based on past practice of the district paying compensation to executive employees working dual roles."  He cited two examples from 2016 where David May Stein received $15,000 and Donna Micheaux received $14,000. (CSMF ¶¶ 262-263).

Through memorandum dated July 11, 2019, Harris informed Anderson that his employment agreement did not contemplate additional compensation and cited Section 8 of the contract: "The Deputy is not entitled to any additional salary increments or add-ons not specifically set forth in this Agreement."   Harris concluded by telling Anderson that he was "advancing your request for additional compensation in the amount of $94,500 to Dr. Hamlet, for his review and future consideration." Dr. Hamlet, in turn, directed Harris to review the contract of prior Deputy Superintendent Micheaux as it included the same restrictive language. (CSMF ¶¶ 305-307). Tiffany Waskowicz (Director of Employee Relations) then analyzed Anderson's request and concluded:

> Here, there is no record evidence of mutual consent between Anderson and the District to pay him an additional $94.5K to perform certain duties, and there is no record evidence of official Board Approval for Mr. Anderson to be compensated an additional $94.5K for performing additional duties he purportedly performed.

Further, the parties contemplated and memorialized a special method in which Mr. Anderson would be compensated if his Agreement expired, which does not include the additional monies Mr. Anderson is requesting.

(Anderson Dep. II Ex. P).

Waskowicz also reviewed Anderson's "past practice" argument regarding additional compensation provided to May-Stein and Micheaux in 2016. Both instances involved formal Board approval prior to the period for which the additional compensation would be awarded. "Thus, Mr. May-Stein and Ms. Micheaux are not similarly-situated to Mr. Anderson as they received Board approval prior to receiving additional compensation and Board approval prior to performing additional duties." By comparison, "Mr. Anderson neither received official Board pre-approval to perform additional duties nor did he receive official Board pre-approval to receive additional compensation."

Anderson's additional compensation claim suffers from the same fundamental defect as his non-renewal claim. He is unable to produce evidence that the review by Human Resources had anything to do with his protected activity. More specifically, no evidence suggests that Mr. Harris or Ms. Waskowicz knew of Plaintiff's protected activity (supporting Ms. Frankovich's complaint of discrimination). (CSMF ¶¶ 296-297). As such, Anderson is unable to establish the causal link required for a prima facie case.

The context of Anderson's request and the evidence relating to this request are insufficient to otherwise establish a reasonable inference that retaliation was the likely reason for the denial or that the reason stated by Human Resources was pretextual. The School Code prohibits the modification of "[t]ermination, buyout and severance provisions … during the course of the contract…" 24 P.S. § 10-1073(e)(v). By its comparative silence, the School Code does not foreclose contract amendments to increase an

assistant superintendent's compensation during the contract term.   However, such a contract modification must comply with School Code requirements.

The formal board approval process is not a mere technicality.   Instead, that formal process is the only way to legally amend an employment agreement to provide for increased compensation under the School Code. *See Preston v. Saucon Valley School Dist.*, 666 A.2d 1120, 1122-23 (Pa. Cmwlth. Ct. 1995) (addendum to superintendent's contract that would increase salary must be presented to school board and approved through official board vote in a public meeting).

The after-the-fact request by which Anderson would have PPS pay him nearly $100,000 in additional compensation (as he was exiting) conflicts with the letter and the spirit of the School Code.   When it comes to high level administrators — those few commissioned employees who have employment contracts — the General Assembly's directives are quite clear.   A contract is to be specific, set forth the compensation to be paid, and then enforced by its terms.   If there is mutual agreement to increase compensation during the term of a contract, there must first be transparency through formal and public action by the school board.   It is highly doubtful that the form or the substance of Anderson's request could ever satisfy these standards.[3]

More to the point when a plaintiff is attempting to prove retaliation, Anderson is unable to show that PPS has granted similar requests (and thus treated him differently

---

[3] There are other problems with Anderson's request to be sure.   For example, two of the positions he covered were direct reports to him.   (CSMF ¶ 38). Dr. Hamlet, who has been without a deputy superintendent since Anderson's departure, spoke to the obvious problem of adding compensation when such a position is vacant.   (CSMF ¶¶ 279-280).   Anderson sought additional compensation of $45,500 for the Chief Academic Officer role even though that position was unfilled at the outset of his contract and was then vacant (upon the departure of Ms. Ramji) for the year that Anderson took to find a replacement.   (CSMF ¶¶ 273-275).   He sought compensation for the role of Chief Human Resources Officer while acknowledging that he was asked to help at times and participated in meetings but did not have his name assigned to any human resources paperwork. (CSMF ¶¶ 301-302).

{DocNo=00805701.1 }

18

than a similarly-situated employee).  References to a "retro-tabbing" mechanism used for approving additional payments in other contexts is not probative.  It is fair to say that May-Stein and Micheaux were similar in the sense that both had employment agreements specifying the compensation to be paid and requiring formal written amendment if the parties mutually agreed to modify the contract.  Neither presents a helpful comparison for Anderson because both involved formal, Board approval prior to the specified work and a discrete amount of additional compensation. Both approvals followed the process required to amend an existing employment contract under the School Code.  *See Preston*, 666 A.2d at 1122-23.

The school board was presented with the requests for May-Stein and Micheaux in time to consider and take formal, transparent action through a public vote.  Both requests set forth discrete periods that were upcoming and specific compensation for the identified work.  May-Stein, who was an assistant superintendent at the time, received Board approval on January 27, 2016, to perform additional job duties of providing oversight and supervision to PSE for additional compensation effective February 1, 2016. Similarly, Micheaux received Board approval on February 24, 2016, to perform the additional duties of providing direct oversight and supervision to the five Assistant Superintendents for Instructional Leadership and the Assistant Superintendent of Student Support Services, effective February 29, 2016 through June 30, 2016.

By comparison, Anderson sought substantial compensation for his alleged past performance of roles in 2017, 2018 and 2019.  Importantly, Anderson cannot identify another high-level administrator who submitted a similar, after-the fact request for greater

compensation. And he is unable to present evidence that retaliation was a consideration, let alone the "likely reason" his request was not granted.

Compliance with the terms of the Employment Agreement and the School Code is an obvious and legitimate reason for denying Anderson's request, and entails considerations of prudent financial stewardship and transparency.  Anderson's testimony suggests that he views the question to be whether it was possible for PPS to grant his request. A more relevant question is: why would a responsible school district pay additional compensation under the circumstances and where it had no legal obligation to do so?  The facts and circumstances raise no questions about the legitimacy of PPS's considerations when they reviewed Anderson's request. Instead, the circumstances strongly suggest that the request was not given the green light by Human Resources simply because of its contractual analysis.  *See, e.g. Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (rejecting attenuated retaliation theory where evidence indicated a more likely and straightforward risk analysis by defendant who terminated plaintiff's employment).

Viewing the entire record, Plaintiff has again failed to produce evidence sufficient to establish an issue of material fact as to the causal link required for a *prima facie* retaliation case. Nor is there evidence from which it may reasonably be inferred that Anderson's protected activity was the likely reason for, or but-for cause of, the denial of his request for an additional $94,500.

## IV.    CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion for Summary Judgment as set forth in the proposed Order.

CAMPBELL DURRANT, P.C.


By:      s/Brian P. Gabriel
        Brian P. Gabriel (PA 73132)
        535 Smithfield Street, Suite 700
        Pittsburgh, PA  15222
        Tel: (412) 395-1267/Fax: (412) 395-1291
        bgabriel@cdblaw.com
        *Counsel for Defendant,*
        *Pittsburgh Public Schools*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on July 16, 2021, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will notify the following of the filing of the same:

Elizabeth A. Tuttle, Esq.
Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, PA  15222
*Attorneys for Plaintiff*

CAMPBELL DURRANT, P.C.

By:____s/Brian P. Gabriel_____
Brian P. Gabriel

{DocNo=00805701.1 }